UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN GONZALEZ et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 17 C 7080 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| MICHAEL G. SCALETTA et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Juan Gonzalez ("Gonzalez") and his stepdaughter, Stefany Cardenas ("Cardenas") (collectively "Plaintiffs"), bring this action against the City of Chicago and several current and former officers in the Chicago Police Department (collectively "Defendants") pursuant to 42 U.S.C. § 1983. (R. 1, Compl.) Presently before the Court is Plaintiffs' motion for an "order barring reference to and use of information from missing persons reports pertaining to" Cardenas, (R. 63, Mot. to Bar), as well as Plaintiffs' motion to compel the deposition of Defendant Greg M. Giuliani ("Giuliani"), (R. 83, Mot. to Compel[1]). For the reasons set forth below, Plaintiffs' motion to bar is granted, and Plaintiffs' motion to compel is granted.

## BACKGROUND

On September 29, 2017, Plaintiffs filed the present lawsuit against Defendants under Section 1983, alleging that Defendants deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. (R. 1, Compl. ¶¶ 1, 37, 45, 50, 53.) Plaintiffs allege that, on October 1, 2015, while Gonzalez was home alone at his residence in Chicago,

---

[1] On September 4, 2018, this Court denied the remaining requests contained in Plaintiffs' motion to compel discovery, and only the request to compel the deposition of Giuliani is still pending. (R. 92, Min. Entry.)

Illinois, several Chicago police officers, including Giuliani, entered Plaintiffs' home with their guns drawn without first knocking, ringing the doorbell, or announcing their presence. (*Id.* ¶¶ 8-10, 16.) According to Plaintiffs, the officers told Gonzalez that they were "conducting a wellness check" for Cardenas and that no search warrant was needed. (*Id.* ¶¶ 14-15.) Plaintiffs assert that, when Gonzalez told the officers Cardenas was not at home, the officers refused to let him leave the couch and began searching the house. (*Id.* ¶¶ 16-17, 24.) Plaintiffs further allege that, while Gonzalez sat on the couch, one of the officers "began making inflammatory comments to him, accusing Gonzalez of not caring about his stepdaughter[,]" and "rushed at Gonzalez in an attempt to batter him." (*Id.* ¶¶ 18-19.) According to Plaintiffs, when Gonzalez told the officers he intended to call a lawyer, all but two officers left the premises. (*Id.* ¶¶ 26-27.) Plaintiffs claim that one of the remaining officers guarded Gonzalez while the other continued searching "all of the rooms in the attic, the first floor, and the basement" before leaving the premises. (*Id.* ¶¶ 27-28.) Shortly thereafter, Cardenas arrived home and found her bedroom in "disarray" and "noticed that someone had rummaged through her dresser drawers." (*Id.* ¶¶ 29-30.)

Defendants deposed Cardenas on June 12, 2018. (R. 63, Mot. to Bar at 1.) During her deposition, Defendants' counsel produced two missing persons reports prepared by the Chicago Police Department in 2011 and 2013.[2] (*Id.* at 2.) Defendants' counsel proceeded to question Cardenas about the police reports, at which point Plaintiffs' counsel invoked Federal Rule of Civil Procedure 30(d)(3)(A), (*id.*), which provides that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FED. R. CIV. P. 30(d)(3)(A). Plaintiffs' counsel argued that the reports were "remote in

---

[2] On June 26, 2018, this Court granted Plaintiffs' motion for leave to file the reports under seal. (R. 70, Min. Entry.)

2

time and completely irrelevant to the incident that gave rise to the lawsuit, as well as extremely embarrassing to [Cardenas]." (R. 63, Mot. to Bar at 2.) Plaintiffs' counsel instructed Cardenas not to answer questions pertaining to the missing persons reports, and Defendants' counsel agreed to continue the deposition without questioning Cardenas about the reports. (*Id.*) Two days later, on June 14, 2018, Plaintiffs filed the present motion to bar, arguing that the police reports "ha[ve] no relevance" to the present lawsuit, and continued use of the reports "would serve only to harass and embarrass [Cardenas]." (*Id.*)

Defendants filed their response on June 19, 2018. (R. 66, Defs.' Resp. to Mot. to Bar.) Defendants argue that the police reports are relevant because Cardenas' only damages "are emotional in nature," and "it is not out of the question that on the date of the incident" that gave rise to this lawsuit, "she was still suffering from emotional distress" due to the events described in the reports. (*Id.* at 2-3.) Defendants request that Cardenas sit for a second deposition at Plaintiffs' counsel's expense, should this Court deny Plaintiffs' motion to bar. (*Id.* at 3.)

As to the second motion, during the course of discovery, Defendants' counsel informed Plaintiffs' counsel that Giuliani resides in Arizona and that he would be unable to participate in written discovery or sit for a deposition due to his medical condition. (R. 83, Mot. to Compel at 4.) On August 17, 2018, after issuing two deposition notices in June and one in August, Plaintiffs filed the present motion to compel the deposition of Giuliani. (*Id.* at 3-4.) Defendants filed their response on August 29, 2018, arguing that Giuliani was "physically unable to participate in discovery due to medical issues[,]" and even if he becomes physically able to testify, he may still be unable to travel due to ongoing pain and financial hardship. (R. 91, Defs.' Resp. to Mot. to Compel at 4-6.) For this reason, Defendants propose that Plaintiffs' counsel (1) travel to Arizona to depose Giuliani at their own expense; (2) take the deposition remotely pursuant to Federal

3

Rule of Civil Procedure 30(b)(4); or (3) pay for Giuliani's travel and accommodations, assuming he becomes capable of traveling to Chicago. (*Id.*) On September 4, 2018, this Court ordered Defendants to file an *in-camera* submission regarding Giuliani's medical condition. (R. 92, Min. Entry.) On September 18, 2018, Defendants submitted two letters from Giuliani's doctor addressing the nature and extent of his medical condition, as well as a letter from Defendants' counsel regarding Giuliani's ability to participate in discovery. (*See id.*)

## LEGAL STANDARD

Turning first to Plaintiffs' motion to bar, which the Court treats as a motion for protective order,[3] Federal Rule of Civil Procedure 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1); *see also Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009) ("Given the extensive intrusion . . . that is both permissible and common in modern discovery, the rules provide for the use of protective orders [.]") (citation and internal quotation marks omitted)). "[I]t is necessary for the trial court to have the authority to issue protective orders" because litigants engaged in discovery have the opportunity to obtain "information that not only is irrelevant but if publicly released could be damaging to reputation and privacy." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36; *see also Cty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." (citation omitted)).

---

[3] The Court treats the motion to bar as a motion for protective order because it was filed during the discovery phase of the case and relates to Defendants obtaining discovery, namely, deposition testimony from Plaintiff related to missing persons reports, (R. 63, Mot. to Bar at 1-3). *See* FED. R. CIV. P. 26(c).

4

"The party moving for a protective order must establish that good cause exists for the Court to exercise its discretion in entering a protective order." *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013). The party seeking a protective order can establish good cause by "showing that the disclosure will cause a clearly defined and serious injury." *Hobley v. Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements[.]" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citation omitted).

In deciding whether good cause exists, "the district court must balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. 2011). The Court may consider factors such as "the severity and likelihood of the perceived harm, the precision of the order, the viability of less onerous alternatives, the duration of the order, the privacy interests involved, whether the information is important to the public health and safety, and whether the party benefitting from the confidentiality of the order is a public official." *Caine v. City of Chicago*, No. 11 C 8996, 2012 WL 13059125, at *1 (N.D. Ill. June 28, 2012); *see also Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 206 (N.D. Ill. 2013) ("A district court may also consider privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." (citation and internal quotation marks omitted)). This list is not exhaustive, however, and the Court must consider the facts and circumstances of each case. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997); *Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 5478303, at *2 (N.D. Ill. Nov. 14, 2017).

With respect to Plaintiffs' motion to compel deposition testimony, Rule 30(a) confers upon parties "a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002); *see also* FED. R. CIV. P. 30(a). "The district court exercises significant discretion in ruling on a motion to compel." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996); *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018). "When a district court considers a motion to compel, it must evaluate such factors as timeliness, good cause, utility, and materiality." *CSC Holdings*, 309 F.3d at 993. The district court has discretion to deny a motion to compel where a deposition would not aid in the exploration of a material issue. *Id.* The "burden rests upon the objecting party to show why a particular discovery request is improper." *Charvat v. Valente*, 82 F. Supp. 3d 713, 717 (N.D. Ill. 2015) (citation omitted).

## ANALYSIS

### I. Plaintiffs' Motion to Bar

Plaintiffs claim that the missing persons reports "contain[] extremely personal information about plaintiff Cardenas" and "use of this information would serve only to harass and embarrass plaintiff." (R. 63, Mot. to Bar at 2.) Plaintiffs argue that a protective order is therefore necessary to protect Cardenas' privacy. (*Id.* at 3.)

"Merely asserting that answering questions about [the plaintiff's] private affairs will be embarrassing and humiliating is insufficient to warrant a protective order." *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, No. 14 C 7905, 2015 WL 7293510, at *3 (N.D. Ill. Nov. 19, 2015). Rather, "[e]mbarrassment must be substantial to rise to the level of good cause." *Hollinger Int'l Inc. v. Hollinger Inc.*, No. 04 C 0698, 2005 WL 3177880, at *3 (N.D. Ill. Jan. 19, 2005). The Court has reviewed the sealed missing persons reports and concludes that the reports contain

highly personal information and that Plaintiff's embarrassment would be substantial enough to rise to the level of "good cause." *See Hollinger*, 2005 WL 3177880, at *3. In balancing the pertinent factors, including: (1) the severity and likelihood of the perceived harm to Cardenas should the information in the reports be disclosed and used by Defendants; (2) Cardenas' privacy interests in the information contained in the reports; and (3) the importance of continued use of the reports to Defendants, the Court finds that Cardenas' privacy interests "predominate" in this particular case, and a protective order is necessary to protect those interests. *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999); *see also Nieves*, 948 F. Supp. 2d at 891.

Defendants contend that the reports are highly relevant because Cardenas seeks only emotional damages, and Cardenas' feelings of embarrassment from the incident that gave rise to this lawsuit "can also be explained by past experiences" described in the reports, which "involve interactions between Cardenas and the Chicago Police Department." (R. 66, Defs.' Resp. to Mot. to Bar at 1-2.) It is true that "[w]hen emotional distress damages are a major component of a damages claim, a party's mental health may be a legitimate issue in the controversy." *Flores*, 2015 WL 7293510, at *3. Thus, "when emotional injuries rise above mere humiliation and embarrassment or when a party specifically seeks damages for a psychological condition, the claim amounts to more than a 'garden variety' emotional distress claim," and other potential stressors or sources of emotional distress may be explored. *Id.* However, "[w]here a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for the distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue[.]" *Awalt v. Marketti*, 287 F.R.D. 409, 417 (N.D. Ill. 2012).

7

In this case, Plaintiffs merely allege "garden variety" emotional distress claims that flow naturally from Defendants' alleged misconduct, and such claims do not justify further inquiry into other potential sources of emotional distress in Cardenas' life. *See Flores*, 2015 WL 7293510, at *3; *Awalt*, 287 F.R.D. at 417. Additionally, Plaintiffs have limited their emotional damages to the incident described in their complaint, which occurred more than two years after the events detailed in the 2013 report and more than four years after the 2011 report. *See Flores*, 2015 WL 7293510, at *4 (noting that the court would have a basis to restrict the defendant's inquiries about the plaintiff's emotional state to a particular time period if the plaintiff "limit[ed] her emotional distress damages to that particular period"). The Court is cognizant of the lenient relevancy standards under the Federal Rules of Civil Procedure. *See Miller UK Ltd. v. Caterpillar, Inc.*, No. 10 C 3770, 2013 WL 474380, at *2 (N.D. Ill. Feb. 7, 2013) ("As expansive and inclusive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, the standard for relevancy under the discovery provisions of the Federal Rules of Civil Procedure is even broader, for the information sought need not itself be admissible." (citation omitted)). However, Defendants' interest in the continued use of the missing persons reports and deposing Cardenas about the information contained therein is outweighed by Cardenas' substantial interest in preventing likely damage to her reputation and protecting her legitimate privacy interests. *See Seattle Times Co.*, 467 U.S. at 34-35.

Accordingly, Plaintiffs have met their burden to establish that "good cause" exists for a protective order, and the Court grants Plaintiffs' motion for an order barring reference to and use of information from missing persons reports pertaining to Cardenas during the pretrial discovery phase. For the same reason, the Court denies Defendants' request for a second deposition of Cardenas regarding such information.

8

Plaintiffs' motion to bar does not include any specific requests concerning the desired scope or duration of a protective order. Based on the Court's reading of the motion and the analysis above, however, the Court's order granting Plaintiffs' motion to bar prohibits Defendants from further questioning Cardenas about the missing persons reports or otherwise seeking discovery regarding information contained in the reports.

## II. Plaintiffs' Motion to Compel Giuliani's Deposition

Turning to Plaintiffs' motion to compel the deposition of Giuliani, the relevant factors of timeliness, good cause, utility, and materiality weigh in favor of granting the motion. *See CSC Holdings*, 309 F.3d at 993. Good cause exists to compel the deposition of Giuliani because it would "aid in the exploration" of material issues, particularly because Plaintiffs' complaint describes various interactions with several different officers, including Giuliani, on the day of the incident that gave rise to this lawsuit, (R. 1, Compl. ¶ 35). *See CSC Holdings*, 309 F.3d at 993. Indeed, based on the allegations in the complaint, Giuliani might have personal knowledge of pertinent events relating to Plaintiffs' claims. (R. 1, Compl. ¶ 35.)

Courts also "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it[.]" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citation and internal quotation marks omitted). After reviewing Defendants' *in camera* submission, the Court concludes that Defendants have adequately demonstrated that Giuliani suffers from a medical condition that impedes his ability to travel to Chicago for his deposition, and that requiring him to do so would pose a special hardship and undue burden on Giuliani. *See id.*; *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 467 (N.D. Ill. 2007) (noting that district courts may consider whether factors such as time, expense, and inconvenience of travel present a "special hardship" for the deponent).

9

Defendants, however, state in their response that they "would have no objection to extending discovery for the limited purpose of completing the discovery addressed to Defendant Giuliani." (R. 91, Defs.' Resp. to Mot. to Compel at 5.) The parties, therefore, only disagree as to where Giuliani's deposition should take place and how his deposition should be taken. (*Id.*; R. 83, Mot. to Compel at 4-5.) "As a general rule, a party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order designating a different place." *New Medium Techs. LLC*, 242 F.R.D. at 465. "In such instances, courts have broad discretion in selecting the locale for a deposition." *Id.* at 466. While Defendants have not filed a formal motion for a protective order regarding the location for Giuliani's deposition, they have requested relief that is the subject of a protective order and have demonstrated "good cause" for the Court to exercise its discretion in issuing a protective order "specifying terms" for Giuliani's deposition, including its "time and place," as well as "the allocation of expenses" for the deposition. FED. R. CIV. P. 26(c)(1)(B).

Accordingly, the Court orders Giuliani to sit for a deposition, but Plaintiffs' counsel should conduct Giuliani's deposition by remote means such as videoconference, or, in the alternative, Plaintiffs' attorneys may travel to Arizona to take Giuliani's deposition at their own expense. Conducting Giuliani's deposition via videoconference pursuant to Rule 30(b)(4) "is the most economical solution, by eliminating the time, effort[,] and expense inherent to travel." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) Pte. Ltd.*, No. 10 C 4811, 2011 WL 5598358, at *2 (N.D. Ill. Nov. 17, 2011); *see also P.H. Int'l Trading Co. v. Christia Confezioni S.P.A.*, No. 04 C 903, 2004 WL 2538299, at *2 (N.D. Ill. Sept. 24, 2004) ("Taking the deposition via videoconference strikes the court as the most logical, economical solution because nobody is required to travel.").

As to costs, the Court sees no reason to shift the burden of costs to Defendants given the circumstances. Plaintiffs' counsel must therefore pay for any of their own expenses associated with taking Giuliani's deposition by remote means as well as their own travel costs if they elect to depose Giuliani in person in Arizona. *See ISA Chi. Wholesale, Inc. v. Khan*, No. 09 C 3942, 2010 WL 2266463, at *3 (N.D. Ill. June 3, 2010) ("[C]ourts have discretion to determine which party should bear the costs associated with a deposition."). Plaintiffs' motion to compel Giuliani's deposition is therefore granted, subject to the requirement set forth herein that his deposition be taken by videoconference or in Arizona at a location that Giuliani can travel to taking into account his medical condition. Plaintiffs' counsel should check with this Court before incurring substantial costs for this video deposition because this Court may be able to provide assistance with its own video equipment.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to bar (R. 63) is GRANTED as set forth herein. Plaintiffs' motion to compel Giuliani's deposition (R. 83) is also GRANTED as set forth herein. His deposition shall be taken by videoconference or in Arizona at a location that Giuliani can travel to taking into account his medical condition. The parties shall appear for a status hearing on January 15, 2019, at 9:45 a.m. to discuss the case's status and future progression.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: December 12, 2018**